**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------X

DAVID ASSIF, individually and on behalf of all
others similarly situated,

               Plaintiffs,

     - against -                             **REPORT AND**
                                            **RECOMMENDATION**

TITLESERV, INC. and SETTLEMENT CORP.,        CV 11-3203 (PKC) (AKT)

               Defendants.

--------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**      **P**RELIMINARY **S**TATEMENT

      This putative class action Complaint was commenced in the wake of the April 8, 2011

closing of all facilities owned by Defendant-corporations Titleserv, Inc. and Settlement Corp.

(collectively, the "Defendants") which resulted in the mass layoff of hundreds of employees,

including Plaintiff David Assif and those similarly situated to him (collectively, the "Plaintiffs").

Plaintiffs brought suit to recover damages for Defendants' alleged failure to provide the 60-day

advance notice of mass termination mandated by the Worker Adjustment and Retraining

Notification Act ( "WARN Act"), 29 U.S.C. § 2101, *et seq*. Pursuant to the WARN Act,

Plaintiffs seek to recover wages and benefits for the 60-day period following their terminations.

      Plaintiffs filed the instant Complaint on July 5, 2011. *See* Complaint ("Compl.").

Defendants failed to answer or otherwise respond to the Complaint. Thus, by letter dated

February 6, 2012, Plaintiffs notified the Court of their intention to move for class certification

and, subsequently, for default judgment. *See* DE 4. On March 14, 2012, Plaintiffs filed a motion

for class certification pursuant to FED. R. CIV. P. 23. *See* DE 5. In a Memorandum of Decision and Order dated December 13, 2012, United States District Judge Arthur Spatt: (1) granted Plaintiff's motion for class certification; (2) appointed Plaintiff David Assif as Class Representative; (3) appointed Attorney Erik H. Langeland, Esq. as Class Counsel; (4) ordered Defendants to produce the names and last known addresses of all their employees as of April 8, 2011; and (5) approved the Plaintiffs' proposed class action notice. *See Assif v. Titleserv, Inc.*, 288 F.R.D. 18, 26 (E.D.N.Y. 2012).

Plaintiffs then filed a request for a certificate of default against Titleserv, Inc. with the Clerk of the Court. *See* DE 7. The Clerk entered a notation of default against Titleserv, Inc. on December 17, 2012, in accordance with Rule 55(a). *See* DE 8. On September 27, 2013, Plaintiffs requested a certificate of default against Settlement Corp. *See* DE 11. The notation of default against Settlement Corp. was entered on October 11, 2013. *See* DE 12. Following the notations of default against both Defendants, Plaintiffs moved for entry of default judgment. *See* DE 10, 13.

United States District Judge Pamela Chen[1] referred these motions to this Court for a Report and Recommendation whether default judgment should be entered, and, if so, what damages, if any, should be awarded. Based upon the information submitted by Plaintiffs as well as the applicable case law, and for the reasons stated below, the Court respectfully recommends to Judge Chen that: (1) Plaintiffs' motions be GRANTED and default judgments be entered against Defendants Titleserv, Inc. and Settlement Corp. based on their liability under the WARN Act; and (2) the determination of damages, attorneys' fees, and costs be DEFERRED to permit

---

[1]  This action was reassigned from Judge Spatt to Judge Chen on April 23, 2013. *See* Apr. 23, 2013 Electronic Order.

Plaintiffs to complete class discovery within 90 days of Judge Chen's decision on this Report and Recommendation.

## II. BACKGROUND

### A. The Complaint

The following facts are taken from the Complaint and, in a default setting, are assumed to be true for purposes of this motion. Defendants maintained and operated their headquarters at 88 Froehlich Farm Boulevard, Woodbury, New York 11791 and further maintained additional "facilities" throughout the country within the meaning of the WARN Act. *See* Compl. ¶ 3. Plaintiff David Assif was employed by Defendants and worked at the Woodbury facility from May 3, 2010 to April 18, 2011. *Id.* ¶ 5; *see* Declaration of David Assif in Support of Plaintiffs' Motion for Damages ("Assif Decl.") [DE 18-3] ¶ 1. Assif and all similarly situated employees worked at or reported to one of the facilities owned by Defendants until April 8, 2011. Compl. ¶ 6. On April 8, 2011, Defendants closed their facilities. *Id.* ¶ 4. As set forth in the Complaint, Plaintiffs were employees of the Defendants and were terminated "as part of, or as a result of, mass layoffs and/or plant closings" which were ordered by the Defendants. *Id.* ¶ 2. According to Plaintiffs, Defendants constituted a "single employer" under the WARN Act in that the Defendants shared common ownership and common officers and directors, exercised *de facto* control over the labor practices governing Plaintiffs (including the decision to order the mass layoff and/or plant closing at the facilities), shared personnel policies, and manifested a "dependency of operations." *Id.* ¶¶ 2, 34. The Defendants failed to provide Plaintiffs with "at least 60 days' advance notice of termination, as required by the WARN Act." *Id.* ¶ 2. Consequently, Plaintiffs claim that they are entitled to recover their wages and Employee

Retirement Income and Security Act ("ERISA") benefits for that 60-day period, "none of which has been paid." *Id.* Each of the Plaintiffs is an "aggrieved employee" within the meaning of 29 U.S.C. § 2104(a)(7). *Id.* ¶ 49.

Plaintiffs were "discharged without cause on their part" on April 8, 2011 "or within 30 days of that date," and "as the reasonably foreseeable consequence of the mass layoff ordered by the [Defendants] on April 8, 2011" are "affected employees" under 29 U.S.C. § 2101(a)(5). Compl. ¶ 7. Upon information and belief, Assif claims that at the time he was discharged on April 8, 2011, Defendants also discharged approximately 200 other employees at various facilities. *Id.* ¶ 11. Defendants failed to pay Plaintiffs their "respective wages, salary, commissions, bonuses, accrued sick pay and accrued vacation for sixty (60) calendar days following their respective terminations and failed to make the 401(k) contributions and provide them with health insurance coverage and other employee benefits under ERISA for sixty (60) calendar days from and after the dates of their respective terminations." *Id.* ¶ 14.

The class action Complaint seeks the following relief: (1) "unpaid wages, salary, commissions, bonuses, accrued sick pay, accrued vacation pay, pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. §2104(a)(1)(A)"; (2) class certification; (3) appointment of Erik H. Langeland as Class Counsel; (4) appointment of Plaintiff as Class Representative and payment of reasonable compensation for services rendered; and (5) reasonable attorneys' fees and costs. *See* Compl. at 8 ("Wherefore" Clause).

### B. Rule 23 Class Certification

On December 13, 2012, Judge Spatt granted Plaintiff's motion for class certification of

this putative WARN Act class action, pursuant to FED. R. CIV. P. 23.  *See Assif,* 288 F.R.D. at 26.

Although that decision does not set forth a specific definition of the class which was certified,

the class definition proposed in Plaintiffs' motion was stated as follows:

> Persons who worked at or reported to Defendant Titleserv
> (Defendant) at its facility located at 88 [Froehlich] Farm
> Boulevard, Woodbury New York ("Facility") and were terminated
> without cause on or about April 8, 2011, within 30 days of April 8,
> 2011, or in anticipation of, or as the foreseeable consequence of,
> the mass layoff or plant closing ordered by Defendant on or about
> April 8, 2011, and who are affected employees, within the meaning
> of 29 U.S.C. § 2101(a)(5). (the "Class").

*See* Plaintiffs' Memorandum of Law in Support of his Motion for Class Certification Against

Defendant Titleserv, Inc. [DE 5-1] at 1.  This definition mirrors the language of the WARN Act.

In the Memorandum Decision, Judge Spatt also appointed David Assif as Class Representative

and Attorney Erik Langeland as Class Counsel.  *See Assif,* 288 F.R.D. at 26.  The Court further

directed Defendants to produce the names and contact information for their employees as of

April 8, 2011 and approved the Plaintiffs' proposed notice of class action.  *Id.*

### C. Motions for Default Judgment

Plaintiffs moved for default judgment against Defendants Titleserv, Inc. and Settlement

Corp. on September 27, 2013 and October 24, 2013, respectively.  *See* Plaintiffs' Application for

Default Judgment Against Titleserv, Inc. ("Pls.' Appl. For Default J. Against Titleserv, Inc.")

[DE 10]; Plaintiffs' Application for Default Judgment Against Settlement Corp. ("Pls.' Appl. For

Default J. Against Settlement Corp.") [DE 13].  Plaintiffs served the motions on the Defendants

at the Froehlich Farm Boulevard address in Woodbury, New York and confirmed that fact by

filing an "Attorney's Affirmation of Service."  *See* DE 10-3; DE 13-3.  In these motions, Class

Counsel stated that he seeks damages in accordance with the WARN Act but "[t]hese amounts are subject to calculation… because Defendants' business no longer operates and because Defendants have not participated in discovery[,] the calculation has been complicated." *See* Pls.' Appl. For Default J. Against Titleserv, Inc. at 1-2; Pls.' Appl. For Default J. Against Settlement Corp. at 1-2. As such, Plaintiffs request that "an inquest be held as to the proper amount of damages." *See* Pls.' Appl. For Default J. Against Titleserv, Inc. at 2; Pls.' Appl. For Default J. Against Settlement Corp. at 2.

After reviewing Plaintiffs' motions and the limited supporting documentation submitted by Class Counsel, this Court issued an Order on April 17, 2014 directing Class Counsel to supplement his motions by providing legal support for the claimed damages as well as documentation showing the amount of such damages. *See* DE 14. In all, the Court listed nine categories for which it directed Class Counsel to provide documents to support the damages claims and calculations. *Id.* In response, Class Counsel filed a "Notice of Motion for Damages" ("Damages Mot.") [DE 18] on June 13, 2014 to which he annexed the following documents: (1) Memorandum of Law in Support of Plaintiffs' Motion for Damages ("Pls.' Mem.") [DE 18-1]; (2) Affidavit of Erik H. Langeland, Esq. in Support of Plaintiffs' Motion for Damages ("Langeland Aff.") [DE 18-2];[2] (3) Declaration by Plaintiff David Assif ("Assif Decl.") [DE 18-3]; (4) Declarations by Class Members Matthew Kornfeld ("Kornfeld Decl.") [DE 18-4], John Porath ("Porath Decl.") [DE 18-5], Margaret Adams ("Adams Decl.")

---

[2]      Plaintiff filed a corrected version of the affidavit shortly after filing the original on June 13, 2014. *See* DE 19. Plaintiff has annexed to his affidavit (1) contemporaneous attorney time and billing records; (2) calendar year 2011 W-2 forms for Class Members issued by Titleserv, Inc. and Settlement Corp., obtained via subpoena served on ADP; (3) declarations from 11 Class Members; and (4) Class Member Dawn Hunter's medical records. *See id.* Counsel has filed the foregoing W-2s and medical records under seal.

[DE 18-6], Raymond Colonna ("Colonna Decl.") [DE 18-7], Jennifer Harrison ("Harrison Decl.") [DE 18-8], Dawn Hunter ("Hunter Decl.") [DE 18-9], Mark Lindenmann ("Lindenmann Decl.") [DE 18-10], Jacqueline McGinn ("McGinn Decl.") [DE 18-11], Ricky Tse ("Tse Decl.") [DE 18-12], and Susan Volpe ("Volpe Decl.") [DE 18-13]; and (5) a proposed Notice of Class Action [DE 18-14].

In their memorandum of law, Plaintiffs argue that Defendants should be held liable for their violations of the WARN Act and that damages should be awarded to the approximately 200 members of the class. *See* Pls.' Mem. at 2-5. However, as Class Counsel pointed out, "a few procedural housekeeping matters" need to be completed before the instant motions are "fully considered and any judgment is entered." *Id*. at 21. Specifically, Class Counsel requests that Class Members be notified of their opportunity to "prove up" their medical damages by providing supporting documentation of the losses incurred as a result of the abrupt closing of Defendants' plant. *Id*.; *see also* Proposed Notice of Class Action, annexed as Ex. M to the Langeland Aff. Class Counsel proposes that Plaintiffs be given 30 days from the date of the Court's Order to submit any medical expense losses to Class Counsel and that Class Counsel be given 45 days from the date of the Court's Order to file with the Court documentation in support of any requested medical expenses. Pls.' Mem. at 21-22. Second, Class Counsel requests leave to provide Class Members notice and an opportunity to comment on his proposed fee schedule -- Class Counsel seeks to establish a class-action common fund which would award counsel a one-third percentage of any class recovery, pursuant to Rule 23(h). Pls.' Mem. at 22; Langeland Aff., Ex. M. Finally, in light of the preliminary tasks which need to be completed, Class Counsel requests that the Court delay for 60 days Plaintiffs' motions for default judgment. Pls.' Mem.

at 22. Class Counsel requests that after these issues have been resolved, the Court hear and grant Plaintiffs' motions for default judgment and, if warranted, approve Plaintiffs' application for damages, attorneys' fees, and costs. *Id.* The Defendants have not opposed the motions for default judgment.

## III. LEGAL STANDARD

For a movant to obtain a default judgment, it must complete a two-step process. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a). Once the clerk's certificate of default is issued, the moving party may then make an application for entry of a default judgment, pursuant to FED. R. CIV. P. 55(b). A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *See* FED. R. CIV. P. 8(b)(6); *Joe Hand Promotions, Inc. v. Duke Bazzel Tobacco & Lounge LLC*, No. 13 Civ. 300, 2014 WL 2711168, at *1 (N.D.N.Y. Jun. 16, 2014); *Gesualdi v. Specialty Flooring Sys., Inc.*, No. 11 Civ. 5937, 2014 WL 2208195, at *2 (E.D.N.Y. May 28, 2014); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I. U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993)); *Finkel v. Omega Commc'n Servs., Inc.,* 543 F. Supp. 2d 156, 158 (E.D.N.Y. 2008) (citing *Garden City Boxing Club, Inc. v. Batista*, No. 05 Civ. 1044, 2007 WL 4276836, at *2 (E.D.N.Y. Nov. 30, 2007)).

However, "just because a party is in default, the plaintiff is not entitled to a default judgment as a matter of right." *Profi-Parkiet Sp. Zoo v. Seneca Hardwoods LLC*, No. 13 Civ. 4358, 2014 WL 2169769, at *3 (E.D.N.Y. May 23, 2014), *adopted by* 2014 WL 2765793

(E.D.N.Y. Jun. 18, 2014) (internal quotation omitted); *Bravado Int'l Grp. Merch. Servs., Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009). The fact that a complaint remains unanswered will not suffice to establish liability on its claims since "a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading." *Said v. SBS Elecs., Inc.*, No. 08 Civ. 3067, 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010), *adopted as mod. by* 2010 WL 1287080 (E.D.N.Y. Mar. 31, 2010); *Gunawan v. Sake Sushi Rest.,* 897 F.Supp.2d 76, 83 (E.D.N.Y. 2012) ("[I]t remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.").

In determining whether a default judgment should be entered, courts consider the same factors which apply to a motion to set aside entry of a default, namely: "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Reliance Commc'ns LLC v. Retail Store Ventures, Inc.,* No. 12 Civ. 2067, 2013 WL 4039378, at *2 (E.D.N.Y. Aug. 7, 2013) (citing *Mason Tenders Dist. Council v. Duce Constr. Corp.,* No. 02 Civ. 9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)); *see also O'Callahan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (finding that courts may consider "numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved [ ] and whether the grounds for default are clearly established or in doubt") (internal quotations and citation omitted); *U.S. v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (grounds for default judgment were established by the defendant's failure to answer the complaint, particularly in light of the fact that the defendant had expressed no intention to do so at a later time).

Ultimately, the decision to grant a motion for default judgment is left to the sound discretion of the court. *See Finkel v. Romanowicz*, 577 F.3d 79, 87 (2d Cir. 2009) ("In permitting, but not requiring, a district court to conduct a hearing before ruling on a default judgment, Rule 55(b) commits this decision to the sound discretion of the district court."); *Palmieri v. Town of Babylon*, 277 Fed. Appx. 72, 74 (2d Cir. 2008); *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999) ("The dispositions of motions for entries of defaults and default judgments . . . are left to the sound discretion of a district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.") (internal quotations omitted); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1983) ("The circumscribed scope of the district court's discretion in the context of a default is a reflection of our oft-stated preference for resolving disputes on the merits."); *Ainbinder v. Money Ctr. Fin. Grp., Inc.*, No. 10 Civ. 5270, 2014 WL 1220630, at *2 (E.D.N.Y. Mar. 24, 2014) ("The determination of a motion for default judgment is left to the sound discretion of the district court") (citing *Shah*, 168 F.3d at 615).

## IV.  DISCUSSION

### A.  Default

#### 1.  *Willfulness*

When a defendant is continually and "entirely unresponsive," defendant's failure to respond is considered willful. *Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. JREM Constr. Corp.,* No. 12 Civ. 3877, 2013 WL 618738 at *3 (E.D.N.Y. Jan. 28, 2013); *Bridge Oil Ltd. v. Emerald Reefer Lines*, LLC, No. 06 Civ. 14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008). Thus, as to the first factor, the failure of the Defendants to respond to the Complaint,

under the present facts sufficiently demonstrates willfulness.  *See Eastern Sav. Bank, FSB v. Beach,* No. 13 Civ. 341, 2014 WL 923151, at *5 (E.D.N.Y Feb. 12, 2014), *adopted by* 2014 WL 923151 (E.D.N.Y. Mar. 10, 2014); *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007).

Defendants neither answered nor responded in any way to the Complaint, nor did they request an extension of time to respond or communicate with the Court in any way, and the time to do so has expired.  In addition, Plaintiffs provided the Court with a Certificate of Service indicating that Defendants were served with the Notice of Motion for Default Judgment and the accompanying Declaration and Exhibits.  *See* DE 10-3, 13-3, 18-15.  There is no indication that Defendants' failure to respond to the Complaint, as well as the Motions for Default Judgment, despite being properly served, was anything but deliberate.

### 2.     *Meritorious Defense*

Turning to the next factor, the Court is unable to make a determination whether Defendants have a meritorious defense since no such defense has been presented to the Court. *See Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11 Civ. 46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012); *Bridge Oil Ltd.*, 2008 WL 5560868, at *2.  Although Defendants' default constitutes an admission of all the factual allegations in the Complaint as they relate to liability, Plaintiffs must nevertheless demonstrate that the uncontested allegations set forth valid claims.  *See Said*, 2010 WL 1265186, at *2 ("With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."); *see also J & J Sports Prods., Inc. v. Daley,* No. 06 Civ. 0238, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb.15, 2007) (discussing how

"conclusory allegations based on information and belief" are insufficient to support a finding of default-based liability). The Court now assesses whether the Complaint states a claim under the WARN Act.

The WARN Act was passed by Congress to ensure that workers receive adequate notice in advance of plant closings or mass layoffs by businesses. *See 1199 SEIU United Healthcare Workers East v. South Bronx Mental Health Council, Inc*., No. 13 Civ. 2768, 2013 WL 6003731, at *2 (S.D.N.Y. Nov. 13, 2013), *adopted by* 2013 WL 6244716 (S.D.N.Y. Dec. 3, 2013) (citing *Grimmer v. Lord Day & Lord*, 937 F.Supp.255, 256, (S.D.N.Y. 1996). The statute is designed to provide "workers transition time to seek new jobs, and, if necessary, enter skills training programs." *Id.* (citing *Grimmer*, 937 F.Supp. at 256; 29 C.F.R. § 2104(a)(1)).

Generally, to state a claim under the WARN Act, a plaintiff must show that: (1) he or she was employed by an "employer" (2) who failed to provide at least 60 calendar days' advance notice of (3) a "plant closing" or a "mass layoff" which resulted in an (4) "employment loss." *See Warshun v. New York Cmty. Bancorp, Inc.*, 957 F. Supp. 2d 259, 267 (E.D.N.Y. 2013); *see also Telford v. Ideal Mortg. Bankers, LTD.,* No. 09 Civ. 5518, 2010 WL 3924790, at *3 (E.D.N.Y. Aug. 17, 2010), *adopted by* 2010 WL 3909313 (E.D.N.Y. Sept. 27, 2010) (citing 29 U .S.C. § 2104(a)(1)). A business with more than 100 employees qualifies as an "employer" under the WARN Act. *See 1199 SEIU United Healthcare Workers East*, 2013 WL 6003731, at *2 (citing 29 U.S.C. § 2101(a)(1)); *see also Warshun*, 957 F.Supp. 2d at 267 (explaining that "employer" refers to a "business enterprise," namely, a corporate entity and not an individual) (quoting 29 U.S.C. § 2101(a)(1)). Workers who are covered under the statute are entitled to receive a 60-day notice in advance of any "plant closing" or "mass layoff." *Guippone v. BH S&B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013) (citing 29 U.S.C. § 2102). "The Act

defines a 'plant closing' as the 'permanent or temporary shutdown of a single site of employment' that causes an 'employment loss' for fifty or more employees during any thirty-day period." *Ferrer v. Citigroup Global Markets, Inc.*, No. 09 Civ. 5095, 2011 WL 1322296, at *5 (E.D.N.Y. Mar. 31, 2011) (citing 29 U.S.C. § 2101(a)(2)); *Guippone*, 737 F.3d at 225. "A 'mass layoff' is a reduction in force that is not the result of a plant closing and that results in an employment loss at a single site of employment during any thirty-day period for (a) at least thirty-three percent of the employees and at least fifty full-time employees, or (b) at least 500 employees." *Ferrer*, 2011 WL 1322296, at *5 (citing 29 U.S.C. § 2101(a)(3)); *Presser v. Key Food Stores Co-op., Inc.*, No. 01 Civ. 859, 2006 WL 2086346 at *8 (E.D.N.Y. Jul. 25, 2006). The WARN Act defines "'employment loss' as: 'A) an employment termination other than a discharge for cause, voluntary departure, or retirement, B) a layoff exceeding 6 months, or C) a reduction in hours of work of more than 50 percent during each month of any 6-month period.'" *Ferrer, 2011 WL 1322296, at *5* (quoting 29 U.S.C. § 2101(a)(6)).

As noted, the plant closing or mass layoff must take place within a "single site of employment." *1199 SEIU United Healthcare Workers East*, 2013 WL 6003731, at *3; *Presser*, 2006 WL 2086346 at *8. The WARN Act regulations state that "separate locations may be considered a single site of employment if 'they are in reasonable geographic proximity used [by the employer] for the same purpose, and share the same staff or equipment.'" *1199 SEIU United Healthcare Workers East*, 2013 WL 6003731, at *3 (quoting 20 C.F.R. § 639.3(i)(3)). Without "the same staff or operational purpose," physically separate facilities should not be considered a single site. *Id.* (quoting 20 C.F.R. § 639.3(i)(4)). Several courts sitting outside the Eastern District of New York, having examined the legislative history of the WARN Act, concluded that "there may be circumstances when geographically separate workplaces may be aggregated as a

single site of employment." *Id.* (citing *United Food & Commercial Workers Union Local No. 72 v. Giant Markets, Inc.,* 878 F.Supp. 700, 706 (M.D. Pa. 1995); *Austen v. Catterton Partners V, LP,* 268 F.R.D. 146, 150 (D. Conn. 2010)). The "most decisive consideration" under such circumstances is "whether the work sites are either contiguous or in reasonable geographic proximity." *Id.* After the issue of proximity is resolved, "the operational, managerial and labor variables become the decisive factors." *Id.* (quoting *Frymire v. Ampex Corp.,* 61 F.3d 757, 766 (10th Cir. 1995)); *see also Bader v. North Line Layers, Inc.,* 503 F.3d 813, 817-19 (9th Cir. 2007); *Austen*, 268 F.R.D. at 150-51.

An action may be brought against employers who fail to provide the required notice. *1199 SEIU United Healthcare Workers East*, 2013 WL 6003731, at *2 (citing 29 U.S.C. § 2104(a)(4)(1)); *Telford,* 2010 WL 3924790, at *3; *Presser*, 2006 WL 2086346 at *8. Aggrieved employees may recover up to a maximum of 60 days of back pay and benefits, "including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred." 29 U.S.C. § 2104(a)(1)(B); *Ferrer,* 2011 WL 1322296, at *5 n.6.

Accepting the allegations in the Complaint as true, Plaintiffs have asserted a valid claim for relief under the WARN Act. As a preliminary matter, Defendants sufficiently established a "single site of employment." Although the Complaint alleges that Defendants maintained several locations throughout the country, the class certified by Judge Spatt includes solely those persons who worked at or reported to Defendants' facility in Woodbury, New York. Thus, by definition, "reasonable geographical proximity" is satisfied since the entire class originates from the same Woodbury, New York facility. Moreover, Defendants Titleserv Inc. and Settlement Corp. were essentially "the same company." *See* Assif Decl. ¶ 2. As pointed out by Class

Representative David Assif, "[b]oth companies had the same owner, the same executives, and were located in the same building." *Id*. "There was virtually no distinction between the two companies." *Id*. Additionally, Defendants were controlled by a sole owner and shareholder - - James Conway. *Id.* ¶ 4. The Court thus finds that Defendants had a "single site of employment" within the meaning of the WARN Act. *See Guippone,* 737 F.3d at 225; *1199 SEIU United Healthcare Workers East*, 2013 WL 6003731, at *3 ("single site of employment" WARN Act requirement satisfied where all four company sites were located in the South Bronx with no facility more than 2.5 miles apart and these sites were subject to common operations and management).

Next, Plaintiffs have adequately pleaded that they worked at or reported to one of the facilities until April 8, 2011. Compl. ¶ 6. However, without issuing the required 60-day notice to their employees, Defendants closed all facilities on April 8, 2011. *Id*. ¶¶ 4, 10. Plaintiffs were "discharged without cause on their part" on April 8, 2011, or within 30 days of that date" and, therefore, suffered an "employment loss" within the meaning of the WARN Act. *Id*. ¶ 7; 29 U.S.C. § 2101(a)(6). Plaintiffs contend that Defendants discharged approximately 200 other employees at its facilities. *Id*. ¶ 11.

Further, the Defendants constituted a qualified "employer" under the WARN Act based on the fact that they employed "more than 100 employees, who in the aggregate, worked at least 4,000 hours per week exclusive of hours of overtime within the United States." Compl. ¶ 32; 29 U.S.C. § 2101(a)(1). Moreover, the events of April 8, 2011 qualify as a "plant closing" under the WARN Act because there was a permanent shutdown of Defendants' facilities which caused an employment loss of more than fifty people within a thirty-day period (all on April 8, 2011). Alternatively, Plaintiffs have adequately pleaded a "mass layoff" within the meaning of the

WARN Act in view of the fact that 100% of the workforce was terminated as a result of the April 8, 2011 closure. *See* 29 U.S.C. § 2101(a)(3). Given Defendants' failure to issue the statutorily-mandated notice, Plaintiffs did not receive their wages, salary, commissions, bonuses, accrued sick pay and accrued vacation pay for 60 days following their respective terminations. Compl. ¶ 14. Plaintiffs further claim that Defendants failed to make the required 401(k) contributions and to provide health insurance coverage as well as other employee benefits under ERISA for 60 days following their terminations. *Id.* A comprehensive review of the Complaint demonstrates, therefore, that Plaintiffs have stated a valid claim for relief under the WARN Act.

### 3. Prejudice

The last factor to consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied. Denying this motion would be prejudicial to Plaintiffs "as there are no additional steps available to secure relief in this Court." *See Trs. of the Pavers and Road Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. JREM Constr. Corp.*, No. 12 Civ. 3877, 2013 WL 61873, at *4 (E.D.N.Y. Jan. 28, 2013) (internal quotation omitted); *Bridge Oil Ltd.*, 2008 WL 5560868, at *2 (citing *Mason Tenders*, 2003 WL 1960584, at *3). Since all three factors necessary to establish a default have been satisfied here, the Court respectfully recommends to Judge Chen that default judgment be entered against Defendants Titleserv, Inc. and Settlement Corp. for their liability under the WARN Act.

### B. Damages

### 1. Back Pay and Employee Benefits

While a party's default is deemed to constitute a concession of all well-pleaded allegations of liability, it is not considered an admission of damages. *Greyhound Exhibitgroup,*

*Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Therefore, once a party's default as to liability is established, a plaintiff still must prove damages. *Gutman v. Klein*, No. 03 Civ. 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (citing *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974)); *see also Cement and Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. and Training Fund and Other Funds v. Metro Found. Contractors Inc.*, 669 F.3d 230, 234 (2d Cir. 2012); *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 64, 2005 WL 2476264, at * 3 (E.D.N.Y. Oct. 7, 2005). The only question remaining, then, is whether the plaintiff has provided adequate support for the damages sought. *See Gutman*, 2010 WL 4975592, at *1 (burden is on plaintiff to establish entitlement to damages recovery) (citing *Bravado*, 655 F. Supp. 2d at 189 (E.D.N.Y. 2009); *Greyhound*, 973 F.2d at 158). The issue of damages in the instant case is not yet ripe for review as Class Counsel himself acknowledges. *See* Pl.'s Mem. at 6-8. Based on the review and consideration of documentation submitted by Plaintiffs, the Court finds that a number of issues must be resolved before damages can be assessed and awarded.

As discussed above, Plaintiffs have submitted the following evidence in support of their request for damages: (1) W-2 forms from calendar year 2011 for the Class Members; (2) declarations from 11 selected Class Members, including Class Representative David Assif; and (3) medical expense records of Class Member Dawn Hunter. As an initial matter, Plaintiffs maintain that damages are owed to approximately 200 Class Members. Although counsel subpoenaed ADP and received approximately 193 W-2 forms in return which identify the Class

Members by name and address, Class Counsel has not provided any chart or list of these Class Members with the back pay owed to each of them for the 60-day period covered by the WARN Act.  Instead, Class Counsel has provided only the W-2 Forms.  Compared to other cases in which such records do not exist or are unretrievable, Class Counsel has substantial information from which he can readily quantify the individual damages for each Class Member.  Counsel has not done so and instead relies on an extrapolation.  The Court finds this approach overly-simplified and inappropriate when the individualized damages are indeed ascertainable.

The W-2 Forms provide the gross wages paid by Defendants to Plaintiffs from the first working day in 2011 (January 3) through the plant closing which occurred that same year (April 8).[3]  However, to calculate back pay for violation of the WARN Act, "[t]he rate of compensation is the higher of (1) the average regular rate received by such employee during the last 3 years of the employee's employment, or (2) the final regular rate received by such employee."  *See 1199 SEIU United Healthcare Workers East,* 2013 WL 6003731, at *4 (citing 29 U.S.C. § 2104(a) (1)(A)).  Since the W-2s provided by ADP for 2011 make it possible to arrive at a close approximation of the individual damages for each member of the class, the final regular rate of pay for 2011 should be used to perform the computations.  Class Counsel, therefore, needs to perform those calculations for each individual Class Member based on the available W-2 forms - - instead of simply adding up the sums on the W-2 forms and coming to a gross damages total of $3,347,574.27 (= $2,283,887.55 for Titleserv, Inc. employees and

---

[3]     Although Class Counsel asserts in Plaintiffs' Memorandum of Law that "[t]he W-2 and Earning Summary for Defendants show the total earnings paid by Defendants [for] January, February, and March 2011, " Pls.' Mem. at 5, the W-2 forms state only information regarding the final 2011 pay stub submitted by the employer, without any time frame given.  The Court notes that at least one of the declarants stated that he received a paycheck on April 8, 2011, the day the business closed its doors.  *See* Tse Decl. ¶ 8.  The Court assumes, for the sake of argument, then, that the W-2 reflects wages earned through April 8, 2011.

$1,063,686.72 for Settlement Corp. employees). If Class Counsel intends to administer the funds through his firm instead of using an outside administrator as he seems to indicate, he will have to make these calculations in any event in order to address issues of pro-rated vacation days and sick days.

Class Counsel also seeks to recoup the Class Members' 401(k) contributions for the 60-day period of violation under the WARN Act. Counsel states that the W-2 forms provided to the Court include the employer's 401(k) contributions. *See* Pls.' Mem. at 5. The Court declines to accept this assertion since it is unable to determine with certainty whether the contribution amounts reflected on the W-2s were made by the employee or the employer. The "Earnings Summary" portion of the W-2 form states that the 401(k) contribution is reflected in box 12. The form then shows "gross pay"… "*less* 401(k)" in arriving at the taxable wages. There is no indication that this is other compensation or an employer-matching contribution to the employee's contribution. Therefore, to prove that these sums are recoverable damages, the Class Members must provide some evidence that the contributions were *not* part of the automatic deductions from the employee's wages. Alternatively, to the extent that Class Counsel may be arguing that the Class Members should be permitted to make late contributions to their 401(k) plans based on the compensation recovered here, Class Counsel must clarify his position. If Class Members voluntarily contributed to their respective 401(k) accounts without employer contributions, then the Court does not find a basis for Plaintiffs to recover additional damages for what would normally have been a deduction from wages.

The Court also points out that Plaintiffs have not indicated the method by which Class Members were paid. The actual declarations submitted by the 11 Class Members state in some cases that the Class Member received a monthly salary, while in other cases, the declaration

simply says the person was paid a certain amount for the time worked. None of the 11 declarations, however, confirm whether the respective employee was paid an annual salary or on an hourly basis. Moreover, no evidence of any kind has been submitted with respect to the method by which the remaining 182 Class Members were paid.[4]

The Court finds helpful the materials submitted in similar circumstances in *1199 SEIU United Healthcare Workers East*, 2013 WL 6003731. Although not a class action, the plaintiff employees in that WARN Act case "provided daily wage calculations for each affected employee based on his or her final average weekly pay." 2013 WL 6003731 at *4 (citing "Payment in Lieu of Proper WARN Notice" Spreadsheet annexed as Ex. A to the Plaintiffs' Proposed Findings of Fact and Conclusions of Law).[5] The employees were grouped into various categories based upon the number of days of notice that each employee was provided by the defendant company. *Id.* The spreadsheet also stated each employee's weekly wages, date of hire, daily wages, notice date, layoff date, and days of violation. To arrive at the penalty due for

---

[4]      For example, the W-2 for J. Bedell shows a gross pay amount of $1,176.59 for the relevant period while J. Porath's W-2 reflects $90,384.68 gross pay for the same period. It is also worth noting that in his Declaration, Ricky Tse states that "Titleserv had induced me to leave a stable job a few weeks before it laid all of its employees off." Tse Decl., annexed to Pls.' Mem., ¶ 5. In this instance, the W-2 provided covers fewer than the 13 weeks running from January 3, 2011 to April 8, 2011 and does not accurately reflect Tse's monthly salary, which he asserts was $4,166.66. *Id.* ¶ 7. Tse states that he received his first paycheck from Titleserv (although his W-2 lists his employer as "Settlement Corp.") on April 8, 2011 - - the date the company closed its doors. *Id.* ¶ 8. He adds that he took the paycheck to the bank and deposited it, but the check bounced. *Id.* Notwithstanding that fact, Tse's W-2 shows his gross pay for 2011 as $1,923.00, which is inconsistent with the information Tse provided. Class Counsel needs to obtain further information from the Notice he wishes to send to Class Members, including whether they have any pay stubs/statements reflecting their weekly or monthly pay. Otherwise, the Court will be left to make an assessment based solely on the calculations drawn from the W-2 forms.

[5]      For purposes of illustration, the Court refers to the "Payment in Lieu of Proper WARN Notice Spreadsheet" prepared by plaintiffs in the *1199 SEIU United Healthcare Workers East* matter. *See* S.D.N.Y. Docket No. CV 13-2768 (JGK) (JCF), DE 17 at 9.

each respective WARN Act violation, Plaintiffs multiplied the daily rate of pay with the number of days the employee was deprived of the statutorily required notice. In the instant case, the computation is considerably less complex because the notice date is the same for all 193 Class Members for whom W-2 forms were submitted here. The Court finds that a similar spreadsheet would more accurately demonstrate the damages being sought by the class, particularly since those numbers will be needed when it comes time to distribute the individual wages owed and awarded.

Plaintiffs' submission is also unclear with respect to the method by which the amount of accrued sick and vacation pay was determined. In fact, Class Counsel concedes that the sick days and vacation days owed are not reflected in the Class Members' W-2 Forms. Consequently, Plaintiffs have "extrapolated" from the 11 declarations submitted that the average number of accrued vacation days is 15.5. *See* Pls.' Mem. at 7. For example, David Assif states:

> Per Titleserv's policy, I and other employees were entitled to 15 vacation days, 6 paid holidays, and two paid floater days. Thus, I was entitled to 23 paid days off per year. I am, therefore, owed for approximately four and a half weeks of pay or $4,326.92.

*See* Langeland Aff., Ex. B. ¶ 10. Based on these extrapolations, Plaintiffs claim that they are due 15.5 additional days of pay on average, for a total of $576,526.58 for accrued and unpaid vacation time. *See* Pls.' Mem. at 7. This methodology, however, is flawed. If Plaintiffs earned 15.5 vacation days for the first three months of 2011, that number annualized would mean an entitlement to more than 60 vacation days for the year, which, on its face, is implausible. Plaintiffs are apparently seeking to frontload the ***annual*** equivalent of vacation days when, in fact, they worked only 13 weeks during 2011. The appropriate calculation here should be made on a pro-rata basis. Also, if Titleserv's policy was 15 days' vacation per year, the Court fails to see where counsel came up with 15.5 days entitlement. The proper pro rata number of vacation

days for the relevant period is 2.5 days (15 days ÷ 12 months = 1.25 days per month x 2 months

(60 days) = 2.5 days).  Consequently, any award of vacation day accruals must be pro-rated to 60

days - - the WARN Act period at issue.  The Court also notes that some of the declarations assert

that these Class Members are seeking payment for unused vacation days "rolled over" from prior

years (*e.g.*, Kornfeld Decl. ¶ 9 ("I had accrued 30 sick and vacation days"); McGinn Decl. ¶ 7 ("I

had accrued five weeks sick and vacation days.")).  Because the Plaintiffs are required to ***prove***

their damages, the Court is not in a position to award more than a pro-rata portion of vacation

days covered by the statutory 60-day period unless the Plaintiffs are able to produce evidence of

their entitlement to "rolled-over" days beyond solely their verbal representations.[6]  Such proof

can certainly be requested by Class Counsel in the Notice to be sent to Class Members.  On that

basis, this Court respectfully recommends to Judge Chen that the issue of any awards for accrued

vacation time be deferred until this matter is resolved.

Proof of the medical expenses being claimed by the respective Class Members as part of

their claimed damages under the WARN Act is also incomplete.  As an initial matter, Class

Counsel acknowledges that medical expenses still need to be accounted for before an award can

be made or judgment can be entered.  As an example, Plaintiffs have provided the medical

expense records of Class Member Dawn Hunter.  *See* Ex. C annexed to Pls.' Mem.  According to

counsel, Hunter's medical records help to illustrate that (1) the $2,231,716.18 in total damages

---

[6]      The Court finds helpful, for example, the offer letter from Titleserv to John Porath which
is attached to his Declaration.  That offer states specifically Mr. Porath's compensation package,
including the fact that he is entitled annually to 15 vacation days, 6 paid holidays, and 2 floater
days.  *See* Titleserv "Offer of Employment," attached to the Porath Decl.  This letter is construed
against Titleserv.  Class Counsel can certainly use the pro-rata equivalent of 6 paid holidays
(.5 per month x 60 days (2 months) = 1 day) to make an appropriate calculation of wages for the
paid holiday allotment.  As to "floating" days and who may be eligible for such benefit, the
Court finds that without further evidence of such a policy and the manner in which it was
applied, along with the fact that the pro rata share here would be a minimal sum of money, the
Court finds that an award based on floater days should be precluded.

being sought by the class represents the "*minimum* amount of damages," and (2) further evidence collection and computation is necessary before a final damages award can be made. *See* Pls.' Mem. at 6 (emphasis in original). Dawn Hunter was on maternity leave at the time Defendants closed their facilities on April 8, 2011. *See* Hunter Decl. ¶ 3. As a result of necessary medical care received on March 25, 2011, Hunter incurred approximately $20,000 in medical expenses for which she has submitted documentary proof under seal with the Court. *Id.* ¶¶ 4-5; Ex. C annexed to Pls.' Mem. She has provided proof of the Defendants' group health plan coverage. *Id.* Hunter states that these medical expenses were not paid by Defendants under her employee health insurance plan and she was required to personally pay these bills. Hunter Decl. ¶ 5. Hunter would not have been required to use her personal funds to cover these expenses but for Defendants' April 8, 2011 closure. *See* 29 U.S.C. § 2104(a)(1)(B) (permitting employees aggrieved under the WARN Act to recover, *inter alia*, 60 days of the "cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment loss had not occurred"). Although the Court agrees that Class Members are entitled to recoup their medical expenses in such circumstances, the affected individual Class Members must still provide documentary evidence of those expenses before the Court can consider awarding damages under this provision of the WARN Act. Again, this is a matter which Class Counsel needs to address in the Notice he intends to send to Class Members.

Similarly, several Class Members seek to recover damages for commissions and bonuses they state they would have been entitled to for 60 days had the plant closure not occurred. In his declaration, John Porath, who was employed as the Senior Vice President of Sales at Titleserv, Inc., states that the average monthly commission he earned was $12,500. *See* Porath Decl. ¶ 9. That information is confirmed in Titleserv's offer letter to him, a copy of which he attached to

23

his Declaration. Thus, based on the WARN Act's 60-day recovery period, Porath states that he is entitled to recover $25,000 in commissions. *See* Porath Decl. ¶ 9. As to the other Class Members, without some paperwork showing the commission rate, the Court will be left to assess the pro-rata based on the W-2s supplied - - W-2s which presumptively reflect the actual compensation the employee received for the period at issue, including any commissions. Other Class Members who also seek to recover damages for lost commissions have not similarly provided documentary proof demonstrating their entitlement to the requested amounts. *See* Assif Decl. ¶ 9 (seeking $18,000 in commissions); Colonna Decl. ¶ 8 (seeking $30,000 in commissions); Lindenmann Decl. ¶ 8 (seeking $7,000 in commissions).

With respect to bonuses, the same principles apply. Without further evidence as to how and when bonuses were paid and how they were computed, the measure of damages in this area can be calculated. Class Member John Porath claims that Defendants failed to pay him a promised bonus of $150,000. Porath Decl. ¶ 11. In the offer letter annexed to Porath's declaration, the Defendants set out a "Bonus Plan" as applied to him. *See generally id.* According to the offer letter, at the conclusion of twelve consecutive months of employment, Porath would be eligible for a bonus "not to exceed $500,000" - - based upon the chart in the Addendum to the offer letter - - if he satisfied various criteria set forth in the letter. *Id.* Here, Porath's declaration states that he commenced employment with Defendants on April 10, 2010 and worked at the company until the April 8, 2011 closure. *Id.* ¶ 1. It is, therefore, questionable whether Porath is even eligible for a bonus since he had not completed the full twelve consecutive months of employment at the time of the plant closing. Moreover, a memorandum attached to the offer letter explains that a bonus award is conditioned upon the revenue generated for the company. In order for Porath to be eligible for a bonus of $150,000, he would need to

generate total revenue of between $2,000,000 and $4,000,000 for the Defendants.  *Id*.  No

evidence has been provided that Porath met those requirements other than Porath's implied

representation that he did so.  Without some further proof of bonus eligibility for affected Class

Members, the Court cannot recommend a damages award based on bonuses.  Once again, Class

Counsel can address this issue and request the necessary documentation in his proposed Notice

to Class Members.

Finally, the Court notes the question of whether the 60 "days" of damages provided for in

the WARN Act constitute "calendar days" or "work days" has not been addressed by the Second

Circuit.  *See 1199 SEIU United Healthcare Workers East*, 2013 WL 6003731, at *5.  For

example, the Third Circuit has adopted a "calendar days" approach to compute WARN Act

damages, providing recovery for all 60 days of the violation.  *Id*. (citing *United Steelworkers of

America v. North Star Steel Co.*, 5 F3d 39, 42-44 (3d Cir. 1993)).  All other circuits which have

addressed the issue apply a "work day" approach which provides aggrieved employees back pay

only for the work days which appear within the 60 day notification period.  *Id*. (citing *Joe v.

First Bank System, Inc..,* 202 F.3d 1067, 1072 (8th Cir. 2000); *Burns v. Stone Forest Industries,

Inc.,* 147 F.3d 1182, 1182-83 (9th Cir. 1998); *Saxion v. Titan–C–Manufacturing, Inc.,* 86 F.3d

533, 558-61 (6th Cir. 1996); *Frymire v. Ampex Corp.*, 61 F.3d 757, 771-72 (10th Cir. 1995);

*Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Department Stores, Inc.,* 15 F.3d

1275, 1282-1286 (5th Cir. 1994)).

The Court concurs with Judge Francis' reasoning in *1199 SEIU United Healthcare

Workers East* that the "work day" approach is more appropriate and consistent with the WARN

Act and its legislative history.  2013 WL 6003731, at *5.  Under the WARN Act, employers are

liable for "back pay for each day of the violation."  29 U.S.C. § 2104(a)(1)(A).  Moreover,

"[s]uch liability shall be calculated for the period of the violation, up to a maximum of 60 days, but in no event for more than one-half the number of days the employee was employed by the employer."  29 U.S.C. § 2104(a)(1).  "Damages under the WARN Act are the amount of back pay and benefits minus wages or other remuneration actually paid during the period of violation, up to a maximum of 60 days."  *Amalgamated Svc. & Allied Indus. Joint Bd. v. Supreme Hand Laundry, Inc*., 182 F.R.D. 65, 67 (S.D.N.Y. 1998) (citing 29 U.S.C. § 2104(a)(1), (2)).  As pointed out in *1199 SEIU United Healthcare Workers East*, the "notification period, however, is calculated in calendar days."  2013 WL 6003731, at *5 (citing 29 U.S.C. § 2102).  As Judge Francis reasoned:

> If [defendant's] employees had been provided the statutorily required 60 calendar days of notice, they would have had the full period to seek alternative employment but nonetheless would have received pay only for the days they worked.  This interpretation is consistent with the purpose behind the WARN Act, which seeks to provide a "two-month uninterrupted income stream facilitating a job search."

*Id.* (citing *Burns*, 147 F.3d at 1184-85).  In light of the recommendation that the Court adopt a "work day" calculation, the Court directs that Plaintiffs submit a revised claim for back pay which reflects damages premised on total "work days" as opposed to "calendar days."

In view of the foregoing information, the Court respectfully recommends to Judge Chen that the determination of damages be DEFERRED to allow Plaintiffs to complete class discovery as outlined above within 90 days of the Court's decision on this Report and Recommendation.

## 2.    *Attorneys' Fees*

Likewise, Plaintiffs' application for attorneys' fees and costs must also be deferred pending the completion of class discovery.  Under the WARN Act, reasonable attorneys' fees are authorized to the prevailing party "as part of the costs."  29 U.S.C. § 2104(a); *1199 SEIU United*

*Healthcare Workers East*, 2013 WL 6003731, at *6; *Amalgamated Svc.*, 182 F.R.D. at 69. In the instant motion, Class Counsel "moves the Court pursuant to Rule 23(h) and Rule 54(d)(2) and asks the Court 's approval of one-third of the common fund that would be created upon recovery and collection of the judgment sought here as a reasonable fee." *See* Pls.' Mem. at 12; *see also* FED. R. CIV. P. 23(h) (in a motion made on notice to all parties under Rule 54(d)(2) "[i[n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement"); *In re Citigroup Inc. Bond Litigation*, 988 F.Supp.2d 371, 372 (S.D.N.Y. 2013). Counsel argues that "long-standing case law and practice" permit him, as Class Counsel, to be paid a fee out of a common fund created for the benefit of the class. Pls.' Mem. at 12 (citing FED. R. CIV. P. 23(h); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-81 (1980)). At the present moment, Class Counsel states that the *minimum* amount of damages being sought is $2,231,716.81. *See* Pls.' Mem. at 6 (emphasis in original). Counsel in fact admits that this amount is subject to increase after the parties' respective medical expenses, vacation days, and sick days are finally computed. *Id*.

Applying the one-third percentage method to the damages calculated in a lump sum by Plaintiffs' Counsel results in an attorney's fee award of approximately $750,000 for Class Counsel - - the reasonableness of which the Court is unable to determine at this time. Class Counsel has submitted contemporaneous time and billing records as directed by the Court. These records reflect that counsel has expended 186.25 hours in providing legal services in this action. *See* Langeland Aff., Ex. A. According to Class Counsel, he has been retained pursuant to a contingency fee arrangement, although the Court has not been provided with any of the retainer agreements related to this case. *See* Pls.' Mem. at 18. The Court notes that Class Counsel submitted invoices addressed to Plaintiff/Class Representative David Assif which

contain a listing of "Professional Services" provided. *See* Langeland Aff., Ex. A. The single invoice dated June 13, 2014 contains the dates each service was provided, a description of the actual service, and the hours expended. *Id.* There is no identification of any specific attorney or paralegal who performed each of the services. *Id.* Significantly, under the column entitled "Amount," each entry states "NO CHARGE." *Id.* The "NO CHARGE" language presumably reflects the fact that the case was taken on a contingency fee basis and that the clients essentially were not literally expected to pay the bill. No hourly rate has been submitted for the Court's review. Ultimately, the Court will have to determine whether a contingency fee or a lodestar fee computation should be adopted by the Court. To make a determination based on reasonableness as required, the Court needs the billing rates entered on the invoices, along with the actual amount of the respective services provided so that a lodestar computation can be made and considered in conjunction with the calculation of a percentage of the common fund. *See In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *9, No. 06 Md. 1738, 2012 WL 5289514, at *9 (E.D.N.Y. Oct. 23, 2012). Class Counsel, therefore, needs to provide an amended set of contemporaneous billing records. This is an uncontested WARN Act action brought in the context of a default. As such, the Court needs additional information before making a determination (1) whether the attorneys' fees here should be governed by the lodestar method or a common fund theory of recovery, and, (2) in either case, whether the amount sought is reasonable.

As counsel points out, the Supreme Court "has long recognized that 'a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.'" *In re Citigroup Inc. Bond Litig.*, 988 F.Supp.2d at 372-73 (quoting *Boeing*, 444 U.S. at 478). "In awarding a fee, the court must act

"with moderation and a jealous regard to the rights of those who are interested in the fund." *In re Vitamin C Antitrust Litig.,* 2012 WL 5289514, at *9 (quoting *City of Detroit v. Grinnell,* 495 F.2d 448, 469 (2d. Cir. 1974)). In the Second Circuit, courts employ either the lodestar method or a percentage method when calculating appropriate attorneys' fees. *Id.* However, there is a trend in the Second Circuit to use the percentage method based on certain circumstances. *Id.* Even where the percentage method is adopted, however, courts apply the lodestar method to assess the reasonableness of the ultimate fee award. *Id.* In common fund cases, the following factors, discussed by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) - - a securities class action - - are applied by courts to calculate attorneys' fees:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of the litigation;
> (4) the quality of the representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

*In re Air Cargo Shipping Servs. Antitrust Litig.,* No. 06 Md. 1775, 2011 WL 2909162 (E.D.N.Y. Jul. 15, 2011) (quoting *Goldberger,* 209 F.3d at 50). "What constitutes a reasonable fee is properly committed to the sound discretion of the district court, *see Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 172 (2d Cir. 1998), and will not be overturned absent an abuse of discretion, such as a mistake of law or a clearly erroneous factual finding." *Henry v. Little Mint, Inc*., No. 12 Civ. 3996, 2014 WL 2199427, at *12 (S.D.N.Y. May 23, 2014) (citing *Goldberger,* 209 F.3d at 47).

Class Counsel maintains that a common fund theory of recovery is appropriate in the present circumstances applying the *Goldberger* factors. However, the Court finds that this discussion is premature in light of the other unresolved issues noted above. Counsel asserts that

he will be "required to devote substantial amount of time and energy to the case beyond judgment." Pls.' Mem. at 15. While that assertion may be accurate, the Court should have before it the final assessment of the actual damages award to be made here before attempting to calculate an appropriate and reasonable attorneys' fee award.

Defendants have purportedly ceased all business operations, closed all offices, lost all business, and reneged on their financial obligations. *See* Pls.' Mem. at 15 (citing Assif Decl. ¶ 13). As such, Class Counsel states that the administration of a class action of the size here "requires a substantial and ongoing commitment of time." *Id*. That may be so; however, the work to date, including the drafting of the instant motion, totals 186.25 hours according to the billing records, of which approximately 55 hours are designated as legal research.[7] *See* Langeland Aff., Ex. A. The class has already been certified and liability is now established.

For these reasons, the Court does not find this action to be particularly complex, but does find it to be detail-intensive. An analysis of the *Goldberger* factors is best deferred, however, until all of the necessary information delineated in this Report has been gathered and submitted to the Court. Accordingly, based on the foregoing analysis, this Court respectfully recommends to Judge Chen that any determination of attorneys' fees be DEFERRED to allow Plaintiffs to complete class discovery within 90 days of the Court's decision on this Report and Recommendation and to provide a supplemental invoice(s) which reflects all continuing attorney time and expenses.

### 3. Costs

Finally, Class Counsel requests that the Court reimburse costs incurred in the amount of $2,215.25. *See* Langeland Aff. ¶ 6. An attorney's costs are recoverable in a WARN Act case.

---

[7] The Court notes that many of the entries are done in block billing format which makes the apportionment of time difficult to assess.

*See 1199 United Healthcare Workers East*, 2013 WL 6003731, at *8 (awarding $610 in costs); *see also Amalgamated Svc.*, 182 F.R.D. at 69 (awarding $8,618.65 in expenses). Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987); *Sheet Metal Workers Nat'l Pension Fund v. 34 Evans*, No. 12 Civ. 3049, 2014 WL 2600095, at *11 (E.D.N.Y. Jun. 11, 2014). Although Class Counsel has provided an itemized list of expenses incurred in this litigation, he has not provided any supporting documentation. Counsel must continue to itemize his costs and, in the supplemental application for damages, must provide the Court with documentation of payment of those costs. In light of the Court's recommendation that a final determination on damages be deferred, the Court respectfully recommends to Judge Chen that a final determination of costs also be DEFERRED to allow Class Counsel to submit the necessary back-up documentation for those expenses and to provide the supplemental information and documentation which the Court has indicated is necessary.

## V.    CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Chen that

(1) Plaintiffs' motions be GRANTED and default judgments be entered against Defendants

Titleserv, Inc. and Settlement Corp. based on their liability under the WARN Act; and (2) the

determination of damages, attorneys' fees, and costs be DEFERRED to permit Plaintiffs to

complete class discovery within 90 days of Judge Chen's decision on this Report and

Recommendation and to provide the supplemental information and documentation which the

Court has indicated is necessary.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure,

the parties shall have fourteen (14) days from service of this Report and Recommendation to file

written objections.  Such objections shall be filed with the Clerk of the Court via ECF.  A

courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Pamela K.

Chen, and to the Chambers of the undersigned.  Any requests for an extension of time for filing

objections must be directed to Judge Chen prior to the expiration of the fourteen (14) day period

for filing objections.  Failure to file objections will result in a waiver of those objections for

purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900,

901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60

(2d Cir. 1996).

**Class Counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first class mail and to file proof of service on ECF.**

                                                    **SO ORDERED.**

Dated: Central Islip, New York
       August 25, 2014

                                                    /s/ A. Kathleen Tomlinson
                                                    A. KATHLEEN TOMLINSON